UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LATEEF GIBSON,** <br><br> Plaintiff, <br><br> v. <br><br> **STATE OF NEW JERSEY, et al.,** <br><br> Defendants. | Civil Action No. 20-12409 (ZNQ) (LHG) <br><br><br> **OPINION** |

Plaintiff Lateef Gibson, a pretrial detainee currently confined at Mercer County Correction Center ("MCCC"), is proceeding *pro se* with a civil rights complaint alleging claims under 42 U.S.C. § 1983. (*See* Compl., ECF No. 1.) The Court has screened the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a) and 42 U.S.C. § 1997e(c) to determine whether the Court should dismiss it as frivolous or malicious, for failure to state a claim upon which the Court may grant relief, or because it seeks monetary relief from a defendant who is immune from suit. For the reasons below, the Court will dismiss the Complaint in its entirety.

I. **BACKGROUND**

The Court will construe the factual allegations of the Complaint as true for the purpose of this Opinion. This case arises from alleged civil rights violations in connection with Plaintiff's pretrial detention at MCCC during the COVID-19 pandemic. Plaintiff names the State of New Jersey; Charles Ellis, Warden of MCCC; Phil Murphy, Governor of the State of New Jersey; Jared Maples, Director of New Jersey Office of Homeland Security and Preparedness; and Gurbir S. Grewal, Attorney General of the State of New Jersey as defendants.

The Complaint is not a model of clarity, but Plaintiff generally asserts that the Defendants have subjected him to cruel and unusual punishment under the Eighth Amendment and violated his rights to due process and equal protection under the Fourteenth Amendment. (*See* ECF No. 1, at 6.) The Complaint explains that the New Jersey Supreme Court issued a Consent Order, in conjunction with Governor Murphy's Executive Order #103, to release certain categories of inmates from the county jails due to the dangers associated with COVID-19. (*Id.*) Those inmates included those with indicatable offenses. (*Id.* at 6–7.)

According to Plaintiff, Warden Ellis knew that a corrections officer tested positive for COVID-19 in March 2020 and stated in several certifications that officials notified staff and inmates. (*Id.* at 7.) Plaintiff asserts, however, that officials did not notify inmates due to privacy concerns, and another inmate came in contact with this particular corrections officer when he transported the inmate for trial. (*Id.* at 7–8.)

Plaintiff also asserts that Warden Ellis made contradictory and misleading statements regarding COVID-19 mitigation efforts. (*Id.* at 8.) For example, Plaintiff alleges that Warden Ellis stated that corrections officers and staff should stay home if ill but subsequently stated that all staff should return to work. (*Id.*) By way of another example, Plaintiff alleges that Warden Ellis stated that no additional corrections officers or staff had tested positive for COVID-19 notwithstanding that he refused to test them for the virus. (*Id.*)

Plaintiff further alleges that Governor Murphy's Executor Order #103 mandated social distancing, but Warden Ellis failed to enforce social distancing at MCCC. (*Id.* at 9.) According to Plaintiff, Warden Ellis negligently denied him health care, proper ventilation, and fresh air and caused him pain and suffering. (*Id.* at 10.) Due to Warden Ellis' alleged neglect, Plaintiff contracted COVID-19. (*See id.*) Finally, Plaintiff alleges that the medical staff at MCCC is

ineffective and failed to prescribe antibiotics for inmates, like him, who contracted COVID-19. (*See id.*)

## II. **LEGAL STANDARD**

District courts must review complaints in civil actions in which a prisoner or pretrial detainee, is proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(a), or brings an action with respect to prison conditions, s*ee* 42 U.S.C. § 1997e(c). District courts may *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which the court may grant relief, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1).

The legal standard for dismissing a complaint for failure to state a claim pursuant to Sections 1915(e)(2)(B), 1915A(a), or 1997e(c) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. a. 2010). A court properly grants a motion to dismiss pursuant to Rule 12(b)(6) if, "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quotations and citations omitted).

To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

3

liable for the [alleged] misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## III. DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. To succeed on a Section 1983 claim, a plaintiff must allege: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federally secured right. *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1983). The Court construes the Complaint as asserting Fourteenth Amendment conditions of confinement claims,[1] Fourteenth Amendment denial of adequate medical care claims, Fourteenth Amendment equal protection claims, and various state law claims.

### A. Persons Amenable to Suit Under Section 1983

As an initial matter, Plaintiff brings Section 1983 claims against the State of New Jersey. As explained below, the Court will dismiss Plaintiff's Section 1983 claims against the State of New Jersey with prejudice because it is not a "person" subject to liability under Section 1983.

Section 1983 imposes liability on "[e]very *person* who, under color of [State law] . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis

---

[1] Although Plaintiff cites to the Eighth Amendment's Cruel and Unusual Punishment Clause, that clause applies only "after [the State] has secured a formal adjudication of guilt in accordance with due process of law." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). As Plaintiff is a pretrial detainee, the Court liberally construes the Complaint as instead asserting conditions of confinement claims under the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 537 (1979).

4

added). To be liable under Section 1983, therefore, a defendant must be a "person" within the meaning of the statute. *See id.*

It is well-established that "a State is not a person within the meaning of § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). Thus, the State of New Jersey is not a person under Section 1983, and the Court will dismiss Plaintiff's Section 1983 claims against the State of New Jersey with prejudice.[2]

### B. Personal Involvement Requirement

Next, Plaintiff asserts claims against Defendants Murphy, Maples, and Grewal, but fails to demonstrate their personal involvement in the alleged constitutional wrongs. For the reasons below, the Court will dismiss Plaintiff's Section 1983 claims against these Defendants without prejudice.

A defendant in a civil rights action must have personal involvement in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Section 1983 liability, therefore, requires a "showing of direct responsibility" by the named defendant and eschews any "theory of liability" in which defendants played "no affirmative part in depriving any[one] . . . of any constitutional rights . . . ." *Rizzo v. Goode*, 423 U.S. 362, 376–77 (1976). In other words, to establish Section 1983 liability, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Here, Plaintiff has not alleged or pleaded sufficient facts showing how Defendants Murphy, Maples, and Grewal violated Plaintiff's civil rights. (*See generally* ECF No. 1.) As Plaintiff fails

---

[2] The dismissal is with prejudice because any attempt to amend the Complaint against the State of New Jersey would be futile. *See Edwards v. Lindenwold Police Department*, No. 21-13076, 2021 WL 3115809, at *4 (D.N.J. July 22, 2021).

5

to demonstrate their personal involvement, the Court will dismiss Plaintiff's Section 1983 claims without prejudice as to these Defendants for failure to state a claim.

## C. Conditions of Confinement Claim

The Court must now consider whether the Complaint states a Fourteenth Amendment conditions of confinement claim against the only remaining Defendant with respect to Plaintiff's Section 1983 claims, Warden Ellis. The Court will dismiss this claim without prejudice because nothing Plaintiff alleges with sufficient factual matter amounts to punishment.

In accordance with the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520, 549 (1979), officials may not punish detainees before a court convicts them. *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008). The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are "but an incident of some other legitimate government purpose." *Id.* at 232. "[T]he ultimate question" is whether conditions are "reasonably related to a legitimate government objective." *Id.* at 236. The Third Circuit instructs courts to consider the totality of the circumstances of confinement, including any genuine deprivations or hardship over an extended period of time and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose. *Hope v. Warden York County Prison*, 972 F.3d 310, 326 (3d Cir. 2020).

In assessing whether conditions and restrictions are excessive given their purposes, the courts must acknowledge that practical considerations of detention justify limitation on "many privileges and rights." *Bell*, 441 U.S. at 545–46. Though not a convicted prisoner, a pretrial detainee "simply does not possess the full range of freedoms of an unincarcerated individual." *Id.* at 546. As the Supreme Court cautioned in *Bell*:

> In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and

6

> order and operating the institution in a manageable fashion, courts must heed our warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to the expert judgment in such matters.

441 U.S. at 540 n.23.

Here, Plaintiff provides no well-pleaded facts about any hardships or deprivations he faced at MCCC in connection with the COVID-19 pandemic. (*See generally* ECF No. 1.) Additionally, the fact that Warden Ellis allegedly failed to disclose to inmates that a corrections officer had COVID-19 in March 2020 or that Warden Ellis allegedly made contradictory or misleading statements about testing staff for COVID-19 or the protocols for their return to work after illness do not amount to constitutional violations. *See Darby v. Ellis*, No. 20-12944, 2021 WL 409780, at *3 (D.N.J. Feb. 5, 2021).

In light of the substantial deference courts must provide to the judgment of corrections officials and the lack of well-pleaded facts regarding the types and length of deprivations Plaintiff endured at MCCC or the ways in which Warden Ellis' alleged misconduct caused harm to Plaintiff, Plaintiff fails to state a claim for relief. *See Iqbal*, 556 U.S. at 676; *Bell*, 441 U.S. at 545–46. Accordingly, the Court will dismiss without prejudice Plaintiff's conditions of confinement claim for failure to state a plausible claim for relief.

### D. Denial of Medical Care Claim

The Court now considers whether Plaintiff states a claim against Warden Ellis under the Fourteenth Amendment for allegedly denying Plaintiff adequate medical treatment. As explained below, the Court will dismiss this claim because Plaintiff fails to allege that Warden Ellis was deliberately indifferent to Plaintiff's medical needs.

For a denial of medical care to constitute a violation of the Fourteenth Amendment, a plaintiff must demonstrate: "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (evaluating a pretrial detainee's inadequate medical care claim under the same standard used to evaluate similar claims brought by prisoners under the Eighth Amendment). A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). A judge or jury may also determine the seriousness of the inmate's medical need by reference to the effect of denying a particular treatment. *Id.* A condition is serious if denial of a particular treatment would cause death, degeneration, or extreme pain. *See id.*

Deliberate indifference is a "subjective standard of liability consistent with reckless as that term is defined in *criminal* law." *See Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000) (emphasis added). To be found liable, the prison official must know of and disregard an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). A plaintiff, therefore, must allege and plead enough factual matter to allow the court to infer reasonably that the official was subjectively aware of a substantial risk of serious harm and that the official disregarded that risk. *See id.*; *Iqbal*, 556 U.S. at 678.

Here, Plaintiff fails to allege sufficient facts upon which the Court can infer that Warden Ellis was deliberately indifferent to an excessive risk to Plaintiff's health or safety. Plaintiff merely alleges that he contracted COVID-19 at the MCCC because of "the neglect of" Warden Ellis. (*See*

8

ECF No. 1, at 9–10.) However, it is well-established that "[d]eliberate indifference requires significantly more than negligence," *County of Sacramento v. Lewis*, 523 U.S. 833, 849–50 (1998), and mere exposure to COVID-19 because officials failed to eliminate the risk of the virus does not constitute deliberate indifference *per se*. *See Hope v. Warden*, 972 F.3d 310, 329 (3d Cir. 2020).

Furthermore, although Plaintiff vaguely alleges that "M.C.C.C. Medical is ineffective and inactive in treatments" because it does not provide detainees with antibiotics to treat COVID-19, Plaintiff fails to allege how Warden Ellis was involved in this act or omission. (*See* ECF No. 1, at 10.) As Plaintiff fails to allege Warden Ellis' personal involvement, Plaintiff fails to state a claim for relief against him. *See Rizzo*, 423 U.S. at 376–77. Moreover, even if Plaintiff did allege Warden Ellis' personal involvement, this allegation still would fail to state a claim for relief because COVID-19 is a virus and antibiotics do not work against viruses.[3] Accordingly, the Court will dismiss the inadequate medical care claim against Warden Ellis without prejudice for failure to state a claim for relief.

### E. Equal Protection Claim

Plaintiff also vaguely asserts an equal protection claim. (*See* ECF No. 1, at 6.) For the reasons set forth below, the Court will dismiss Plaintiff's equal protection claim against Warden Ellis without prejudice.

---

[3] According to the World Health Organization, antibiotics do not work against viruses. They only work on bacterial infections. COVID-19 is caused by a virus, so antibiotics do not work. Antibiotics should not be used as a means of prevention or treatment of COVID-19. They should only be used as directed by a physician to treat a bacterial infection. *See* New Jersey COVID-19 Information Hub, available at https://covid19.nj.gov/faqs/coronavirus-information/testing-and-treatment/are-antibiotics-effective-in-preventing-or-treating-the-covid-19#:~:text=No.%20According%20to%20the,treat%20a%20bacterial%20infection (last visited Oct. 6, 2021).

9

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state a class-based equal protection claim, a plaintiff must allege that: (1) he is a member of a protected class; and (b) that the defendants treated him differently from similarly situated inmates. *See id.* Where the plaintiff does not claim membership in a protected class, he must state facts showing that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

Here, Plaintiff fails to state a class-based equal protection claim because he does not allege that he is a member of a protected class. (*See generally* ECF No. 1.) Plaintiff also fails to state a non-class-based equal protection claim because he does not allege that Warden Ellis treated him differently from others similarly situated or that there was no rational basis for the difference in treatment. (*See generally id.*) Accordingly, the Court will dismiss without prejudice Plaintiff's equal protection claim against Warden Ellis for failure to state a claim.

### F. State Law Claims

As noted above, the Court construes the Complaint as asserting various state law claims. However, as this Court has already dismissed all claims for which it has original jurisdiction, this Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

The potential basis for this Court's jurisdiction over Plaintiff's state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related

to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 387 (1998).

Where a district court has original jurisdiction over federal claims and supplemental jurisdiction over state claims, the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Where courts dismiss federal claims at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

Here, the Court has already dismissed all of Plaintiff's claims for which it has supplemental jurisdiction. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## IV.   CONCLUSION

For the reasons set forth above, the Court will dismiss with prejudice Plaintiff's Section 1983 claims against the State of New Jersey. The Court will also dismiss without prejudice Plaintiff's Section 1983 claims against the remaining Defendants. With respect to the latter claims, Plaintiff may file an amended complaint if he believes he can allege facts curing the above deficiencies and entitling him to relief. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. An appropriate Order follows.

Zahid N. Quraishi
United States District Judge